UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL F. TUR, ALINE M.
BYRNES, ANN MARIE TUR and
HENRY P. TUR, JR.,

               Plaintiffs,

v.                              Case No. 3:21-cv-483-MMH-LLL

JOHN R. NETTLETON and LARA
M. SABANOSH,

               Defendants.

_____

## ORDER

**THIS CAUSE** is before the Court on Plaintiffs Michael F. Tur, Henry P.

Tur, Jr., Ann Marie Tur, and Aline M. Byrnes' Motion for Remand to State

Court, (Doc. 23; Motion for Remand) filed June 25, 2021. Defendant John R.

Nettleton filed a Response in Opposition to the Motion for Remand on June 28,

2021. (Doc. 24; Response to Remand). Defendant Sabanosh has failed to file a

timely response; accordingly, this matter is ripe for review. For the reasons

explained below, the Court lacks subject matter jurisdiction over this action,

and as such, the Motion for Remand will be granted.

## I.   <u>BACKGROUND</u>[1]

In 2015, Christopher Tur was a civilian employee of the Navy who worked at a general store located within Naval Station Guantanamo Bay ("NSGB" or "the Base") on the island of the Republic of Cuba. (Doc. 3; Complaint) ¶¶ 2-3, 17. At the time, Tur was married to Lara Sabanosh. Id. ¶ 17.[2] At some point, Sabanosh began an extramarital affair with Defendant John Nettleton, NSGB's Commanding Officer. Id. ¶¶ 3, 24. When Tur caught wind of the affair, he confronted Nettleton outside Nettleton's home on the Base. Id. ¶¶ 25–27. A physical altercation ensued in which Nettleton severely injured Tur. Id. ¶¶ 27, 37–45. According to Plaintiffs, Nettleton ultimately "took the injured Tur to the water, and caused him to be drowned" in Guantanamo Bay "knowing that his body would wash out to sea and likely never be found." Id. ¶¶ 44–46.

Following Tur's death, Nettleton destroyed physical evidence and misdirected the search for Tur's body. Id. ¶¶ 47–50, 73–96, 98–102. Sabanosh also hindered the investigation by failing to disclose the altercation between

---

[1] In considering Plaintiffs' Motion for Remand, the Court must accept all factual allegations in the Complaint as true and construe all ambiguities in favor of Plaintiffs. Vetter v. GEICO Gen. Ins., No. 8:18-cv-2381-WFJ-AAS, 2018 WL 5801409, at *1 (M.D. Fla. Nov. 6, 2018) (citing Gulf-to-Bay Anesthesiology Assocs., LLC v. UnitedHealthcare of Fla., Inc., No. 8:18-cv-233-EAK-AAS, 2018 WL 3640405, at *1 n.1 (M.D. Fla. July 20, 2018)). As such, the facts recited here are drawn from the Complaint and may well differ from those that ultimately can be proved.

[2] Defendant Sabanosh is referred to throughout the Complaint by her former married name, Lara Tur. See generally Complaint.

Tur and Nettleton. Id. ¶¶ 56, 62–63, 68. Additionally, she attempted to lead the public to believe that Tur was suicidal and that his death was the result of an overdose. Id. ¶¶ 297–305.

In January 2019, a federal grand jury sitting in the Middle District of Florida returned an Indictment charging Nettleton with various criminal offenses as a result of his actions following Tur's death. Id. ¶ 148. After a trial, a jury convicted Nettleton of concealing material facts, obstructing justice, falsifying records, and making false statements. Id. ¶ 149. During the trial, Tur's siblings and mother, Plaintiffs in this case, learned for the first time about the altercation between Tur and Nettleton and the details of the events surrounding Tur's death. Id. ¶ 148.

Plaintiffs now bring this civil action against Nettleton and Sabanosh.[3] See generally Complaint. Although Plaintiffs' eleven-count Complaint is grounded entirely on state tort law, the actions giving rise to the claims against Nettleton predominately occurred on NSGB. Id. ¶¶ 186, 199–204, 212–16, 227–

---

[3] Plaintiffs assert claims against Nettleton for wrongful death based on assault and battery, negligence, and negligent failure to render aid. See Complaint ¶¶ 185–224. Plaintiffs also bring claims for intentional infliction of emotional distress, tortious interference with a dead body, spoliation, and civil conspiracy. See Complaint ¶¶ 225–330. As to Sabanosh, Plaintiffs allege intentional infliction of emotional distress, spoliation, and civil conspiracy. Id. ¶¶ 258–269, 282–330. Plaintiffs also sued Kelly Wirfel, NSGB's public affairs officer. Id. ¶ 172. However, Plaintiffs dismissed the claims against Wirfel on January 3, 2022. (Doc. 60). In light of Wirfel's dismissal, the Court has omitted recitation of facts related to Wirfel's alleged involvement.

31, 237–40, 247–51, 259–61, 271–75. Relying on that, Nettleton removed the case to federal court asserting the existence of federal question jurisdiction. (Doc. 1; Notice of Removal). Plaintiffs subsequently moved to remand the case to state court, see Motion for Remand, and Nettleton filed his Response to Remand arguing that remand is inappropriate because the Court has subject matter jurisdiction over Plaintiffs' claims. See Response to Remand.

After removal, Nettleton also filed a motion seeking to dismiss Plaintiffs' Complaint. Nettleton argued that all of Plaintiffs' claims are preempted by federal law, and because federal law provides no remedy, the claims must be dismissed with prejudice. See Captain Nettleton's Motion to Dismiss and Incorporated Memorandum of Law (Doc. 21; Motion to Dismiss) at 2-12. Plaintiffs filed a response challenging these assertions, see Plaintiffs' Response in Opposition to Motion to Dismiss (Doc. 25; Response to Motion to Dismiss), and Nettleton filed a reply, see Defendant Nettleton's Reply Brief in Further Support of His Motion to Dismiss and Incorporated Memorandum of Law (Doc. 39; Reply). Because the parties, in briefing the Motion to Dismiss, elaborate on their arguments regarding the existence of subject matter jurisdiction, the Court, in an abundance of caution, also considers those arguments in ruling on the Motion for Remand. On this record, before considering any other matters, the Court now determines whether Nettleton has properly invoked the jurisdiction of the federal courts.

- 4 -

## II.   <u>LEGAL STANDARD</u>

A defendant may remove a case from a state court to federal court if the federal district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). Original jurisdiction exists where a federal district court has "at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." <u>PTA-FLA, Inc. v. ZTE USA, Inc.</u>, 844 F.3d 1299, 1305 (11th Cir. 2016) (quoting <u>Baltin v. Alaron Trading Corp.</u>, 128 F.3d 1466, 1469 (11th Cir. 1997)). Here, Nettleton seeks to invoke only the Court's federal question jurisdiction under § 1331, which provides: "The district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws or treaties of the United States." <u>See</u> Notice of Removal at 3; 28 U.S.C § 1331.

In determining whether a claim arises under federal law, the Court is guided by the "well-pleaded complaint rule." <u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200, 207 (2004). That rule demands that a federal question appear on the face of the plaintiff's well-pleaded complaint. <u>Gully v. First Nat'l Bank</u>, 299 U.S. 109, 112–113 (1936); <u>see</u> <u>also</u> <u>Kemp v. Int'l Bus. Mach. Corp.</u>, 109 F.3d 708, 712 (11th Cir. 1997) ("A case does not arise under federal law unless a federal question is presented on the face of plaintiff's complaint."). Generally, a federal question appears on the face of the complaint when federal law

creates the cause of action. Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1373 (11th Cir. 1998). To meet the burden of establishing the existence of proper federal jurisdiction, the removing "defendant [ ] must show that the plaintiff['s] complaint, as it existed at the time of removal, provides an adequate basis for the exercise of federal jurisdiction." Adventure Outdoors Inc. v. Bloomberg, 552 F.3d 1290, 1294-95 (11th Cir. 2008); see also Ehlen Floor Covering, Inc. v. Lamb, 660 F.3d 1283, 1287 (11th Cir. 2011). Because a federal question must appear on the face of the complaint, a federal defense alone will not support removal. Kemp, 109 F.3d at 712.

Nevertheless, "even when a plaintiff has pled only state-law causes of action, he may not avoid federal jurisdiction if either (1) his state-law claims raise substantial questions of federal law or (2) federal law completely preempts his state-law claims." Dunlap v. G&L Holding Grp., Inc., 381 F.3d 1285, 1290 (11th Cir. 2004) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 13 (1983)). A state-law claim raises substantial questions of federal law where federal law is "'an essential element'" of the claim, such that the federal right or immunity that forms the basis of the claim "'will be supported if the federal law is given one construction or effect and defeated if it is given another.'" Id. (quoting Mobil Oil Corp. v. Coastal Petroleum Co., 671 F.2d 419, 422 (11th Cir. 1982)). However, "'[t]he mere presence of a federal issue in a state cause of action does not automatically

confer federal-question jurisdiction.'" Id. (quoting Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 813 (1986)). Rather, to confer federal jurisdiction, "the state-law claim must 'really and substantially involve[ ] a dispute or controversy respecting the validity, construction or effect of [federal] law.'" Id. (quoting Mobile Oil Corp., 671 F.2d at 422); Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005).

As a separate matter, the Supreme Court has long recognized the "complete preemption doctrine" as an "independent corollary to the well-pleaded complaint rule." Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987) (citing Franchise Tax Bd., 463 U.S. at 22). In describing complete preemption, the Supreme Court has explained that "on occasion … the preemptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" Id.; see also Franchise Tax Bd., 463 U.S. at 24 (explaining that, "if a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law").

The Supreme Court has recognized complete preemption hesitatingly, see Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc., 182 F.3d 851, 856 (11th Cir. 1999), and only in rare circumstances, see Ammedie v. Sallie Mae Inc., 485 F. App'x 399, 401 (11th Cir. 2012) (citing Community State Bank

v. Strong, 651 F.3d 1241, 1261, n. 16 (11th Cir. 2011)).[4] In doing so, the Court has emphasized that the "touchstone" of the determination of whether complete preemption supplies federal subject matter jurisdiction by converting a state law claim to one arising under federal law "is congressional intent." Blab T.V., 182 F.3d 851, 857 (quoting Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987)). To conclude that a state law claim is completely preempted, the court must find that Congress intended to not only provide a federal preemption defense, but also "intended to grant a defendant the ability to remove the adjudication of the cause of action to a federal court by transforming the state cause of action into a federal [one]." Id. (alteration in original) (citing Arthur R. Miller, Artful Pleading: A Doctrine in Search of Definition, 76 TEX. L. REV. 1781, 1794 (1998)).

## III.   DISCUSSION

Nettleton argues that this Court has subject matter jurisdiction over Plaintiffs' claims because, in his view, they arise under federal law. First, he contends that jurisdiction exists because Congress has "exclusive legislative jurisdiction"[5] over NSGB, and federal law is exclusive on the Base. See Notice

---

[4] The Court notes that "[a]lthough an unpublished opinion is not binding . . . , it is persuasive authority."   United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally FED. R. APP. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

[5] The term "legislative jurisdiction" refers to the government's power and authority to enact, execute, and enforce legislation. Defs. of Wildlife v. Everson, 984 F.3d 918, 924 (10th Cir. 2020) (citations omitted).

of Removal at 3–9; Response to Remand at 1–8. Next, Nettleton contends that his entitlement to statutory immunity presents a substantial, disputed federal issue that is necessary to Plaintiffs' state law claims. <u>See</u> Notice of Removal at 8–10; Response to Remand at 8–10.

### A. The Exclusivity of Federal Law

According to Nettleton, Congress has the exclusive power to regulate NSGB pursuant to the Property Clause of the United States Constitution, Art. IV, § 3, cl. 2. <u>See</u> Response to Remand at 5–6.[6] He contends that Congress invoked its power under the Property Clause when it granted the President authority to enter into the Lease Agreement with Cuba for the property which NSGB occupies. <u>Id.</u>[7] The Lease Agreement grants the United States "complete

---

[6] Found in Article IV of the United States Constitution, the Property Clause provides: The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; and nothing in this Constitution shall be so construed as to Prejudice any Claims of the United States, or of any particular State.
U.S. Const. Art. IV, § 3, cl. 2.

[7] Congress authorized President Theodore Roosevelt to enter into the Lease Agreement with Cuba in an amendment within the Army Appropriations Act of 1902. 31 Stat 895, Ch 803 (1901).

jurisdiction and control" over the Base.[8] Nettleton argues that this language gives Congress "exclusive legislative jurisdiction" over NSGB and renders federal law exclusive. See Notice of Removal at 6–7; Response to Remand at 4–5.

Nettleton further contends that Congress's exclusive legislative jurisdiction creates a federal question. See Notice of Removal at 4–7. He largely bases his argument on case law arising under the "Enclave Clause" of the Constitution. See Notice of Removal at 3–9.[9] Those cases stand for the proposition that federal question jurisdiction exists over state law claims that arise on federal enclaves if Congress exercises exclusive legislative jurisdiction

---

[8] Article III of the agreement with Cuba sets forth the sovereign power of each country. It provides:

> While on the one hand the United States recognizes the continuance of the ultimate sovereignty of the Republic of Cuba over the above described areas of land and water, on the other hand the Republic of Cuba consents that during the period of the occupation by the United States of said areas under the terms of this agreement the United States shall exercise complete jurisdiction and control over and within said areas. . . .

See Agreement Between the United States and Cuba for the Lease of Lands for Coaling and Naval Stations, Feb. 16–23, 1903, U.S.-Cuba, T.S. 418 (the "Lease Agreement"). Pursuant to a 1934 Treaty the United States and Cuba agreed the lease would "remain in effect '[s]o long as the United States of America shall not abandon the . . . naval station of Guantanamo.'" Rasul v. Bush, 542 U.S. 466, 471 (2004) (alterations in original) (citing Treaty Defining Relations With Cuba, May 29, 1934, U.S. – Cuba, Art. III, 48 Stat. 1683, T.S. No. 866).

[9] The Enclave Clause provides:

> [The Congress shall have the Power] To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards and other needful Buildings; . . .

U.S. Const. Art. I, § 8, cl. 17.

pursuant to the terms of the Enclave Clause. See, e.g., Mater v. Holley, 200 F.2d 123, 124 (5th Cir. 1952).[10] Notably, Nettleton readily acknowledges that NSGB is not a federal enclave. See Response to Remand at 4. Nevertheless, he maintains that Congress possesses the same exclusive legislative jurisdiction over NSGB pursuant to the Property Clause as it possesses over federal enclaves pursuant to the Enclave Clause. See Notice of Removal at 7. On that basis, he argues, like state law claims that arise on federal enclaves, Plaintiffs' state law claims in this action raise a federal question. See Response to Remand at 4–5.

What Nettleton's argument fails to appreciate is that the Enclave Clause is fundamentally different from the Property Clause. The Enclave Clause empowers Congress to regulate federal property within the United States that it obtains from a consenting state. U.S. Const. Art. I, § 8, cl. 17. Congress's legislative jurisdiction over federal enclaves can range from exclusive, to concurrent, to partial. Kleppe v. New Mexico, 426 U.S. 529, 542 (1976) (citations omitted). Pursuant to the terms of the Enclave Clause, Congress obtains "exclusive" legislative jurisdiction over state land when the state cedes all legislative authority over a territory to the federal government. See Mater, 200 F.2d at 123; see also, Stephen E. Castlen & Gregory O. Block, Exclusive

---

[10] Fifth Circuit decisions handed down prior to October 1, 1981, are binding precedent upon this Court. Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Federal Legislative Jurisdiction: Get Rid of it, 154 MIL. L. REV. 113, 116 (1997). Once Congress accepts that exclusive legislative jurisdiction from a state, state sovereignty ceases to exist, all state laws are converted into federal laws, and the applicable law is that of the federal government. Mater, 200 F.2d at 123; Paul v. United States, 371 U.S. 245, 263-264 (1963). For that reason, state law causes of action that existed at the time of consent or cession arise under federal law and create federal question jurisdiction. See, e.g., Mater, 200 F.2d at 123–25; Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1250 (9th Cir. 2006) (citing Mater, 200 F.2d at 125); Stiefel v. Bechtel Corp., 497 F. Supp. 2d 1153, 1156 (S.D. Cal. 2007) (citing Durham, 445 F.3d at 1250); Stokes v. Adair, 265 F.2d 662, 665–66 (4th Cir. 1959). Thus, without any additional action by Congress, the Enclave Clause itself operates to convert state law to federal law and create federal question jurisdiction. Paul, 371 U.S. at 263 ("The cases make clear that the grant of 'exclusive' legislative power to Congress over enclaves that meet the requirements of Art. I, s 8, cl.17, by its own weight, bars state regulation without specific congressional action.").

The Property Clause, in contrast, only gives Congress the power to regulate federal land. Kleppe, 426 U.S. at 540 (citation omitted). Unlike the Enclave Clause, the Property Clause, on its own, does not convert state law to federal law nor does it displace state law. Cal. Coastal Comm'n v. Granite Rock Co., 480 U.S. 572, 580 (1987) ("The Property Clause itself does not

automatically conflict with all state regulation of federal land."). As one court explained, the Property Clause "does not place the exclusive control of the federal public domain in the United States Government." <u>Texas Oil & Gas Corp. v. Phillips Petroleum Co.</u>, 277 F. Supp. 366, 368–69 (W.D. Okla. 1967) (citations omitted). Instead, Congress must activate its broad Property Clause powers by taking affirmative action. <u>Id.</u> When Congress so acts, state law continues to apply unless it conflicts with federal law, in which case the Supremacy Clause causes federal law to preempt the state law. <u>Kleppe</u>, 426 U.S. at 543 (citing U.S. Const. Art. VI, cl. 2); <u>Cal. Coastal Comm'n</u>, 480 U.S. at 580-81 ("<u>[W]hen Congress so acts</u>, the federal legislation necessarily overrides conflicting state laws under the Supremacy Clause.") (emphasis in original) (citation omitted).[11] Absent a conflict, however, there is no preemption, and state law continues to apply.

With respect to subject matter jurisdiction, the fundamental difference between the Enclave Clause and the Property Clause is significant. While the Enclave Clause itself converts state law into federal law, thereby creating a federal question and, as a consequence, subject matter jurisdiction, the

---

[11] The Supremacy Clause states:
> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. Art. VI, cl. 2.

Property Clause simply empowers Congress to enact legislation or authorize regulation governing federal land. It is the Supremacy Clause that causes any law or regulation arising from Congress's authority under the Property Clause to displace conflicting state law; and it does so through a theory of preemption. However, neither the Property Clause nor the Supremacy Clause convert state law into federal law. Cal. Coastal Comm'n, 480 U.S. at 580 ("'[T]he State is free to enforce its criminal and civil laws' on federal land so long as those laws do not conflict with federal law.") (quoting Kleppe, 426 U.S. at 543). Nor do they create "exclusive legislative jurisdiction." Kleppe, 426 U.S. at 542–43 (stating that Congress's exclusive legislative jurisdiction pursuant to the Enclave Clause "has nothing to do with Congress' powers under the Property Clause"). Instead, the Property Clause and Supremacy Clause only allow Congress to displace conflicting state law through preemption.

With this understanding of Congress's power under the Property Clause, the Court turns to Nettleton's argument in support of subject matter jurisdiction over this action. Nettleton contends that Congress—pursuant to the Property Clause—made federal law exclusive on NSGB when it authorized the Lease Agreement. But even if Congress did act pursuant to its authority under the Property Clause to make federal law exclusive on NSGB, that would not convert Plaintiffs' state law claims into federal claims creating a federal question for purposes of subject matter jurisdiction. Instead, this argument, if

correct, presents a federal preemption defense. In other words, to resolve the merits of Plaintiffs' claims, a court authorized to hear the case will have to determine whether the terms of the Lease Agreement show Congress's intent to preempt all state laws on the Base leaving Plaintiffs' only with whatever remedies are available under federal law.[12] But before this Court can reach that question, it must determine whether this federal preemption defense that Nettleton raises creates subject matter jurisdiction. The answer to this threshold question is no.[13]

---

[12] The Court does not suggest that this is the only issue. Nettleton must also show that the Property Clause extends to NSGB, Congress affirmatively acted under the Property Clause when it authorized the Lease Agreement, and that Congress has activated its power under the Property Clause to displace state law on NSGB through preemption.

[13] Nettleton devotes the majority of his briefing to the merits of his preemption defense; that is, whether the Lease Agreement makes federal law exclusive on NSGB. And while the Court does not reach the merits, the Court will touch upon two of his arguments. First, Nettleton repeatedly cites language from the Lease Agreement as providing the United States "exclusive jurisdiction." See generally Notice of Removal; Response to Remand. However, the true language of the Lease Agreement provides the United States "complete jurisdiction and control." The distinction is not without a difference. Indeed, the dictionary defines the word "exclusive," when used in the context of jurisdiction, to mean "single, sole." Webster's Ninth New Collegiate Dictionary, 433 (def. 4(a)) (9th ed. 1983). By contrast, the dictionary defines "complete" as "having all necessary parts, elements, or steps" and "total, absolute." Id. at 269. Unlike the word "exclusive," the word "complete" is not inherently preclusive. For that reason, it is well established that Congress's "complete power" over federal land pursuant to the Property Clause "does not place the exclusive control of the federal public domain in the United States Government." Texas Oil, 277 F. Supp. at 368; Kleppe, 426 U.S. at 541.

It is well settled that an ordinary federal preemption defense does not create federal question jurisdiction. Beneficial Nat'l. Bank v. Anderson, 539 U.S. 1, 6 (2003) (citing Franchise Tax Bd., 463 U.S. at 13–14) (stating that the court must ignore the defense of federal preemption under the well-pleaded complaint rule). This is true even when the validity of the defense is the only contested issue. Franchise Tax Bd., 463 U.S. at 14. It is equally evident that an ordinary preemption defense based on the Property Clause does not raise a "necessary" federal issue in the well-pleaded complaint. See Las Vegas Dev. Grp., LLC v. Heuke, No. 2:15-CV-00922-RCJ, 2015 WL 4523510, at *1 (D. Nev. July 27, 2015) (holding that anticipated defenses under the Property Clause and Supremacy Clause were not necessary elements of the state law claim); City of N. Las Vegas v. Clark Cty., No. 2:11-CV-00944-PMP-PAL, 2011 U.S.

---

Second Nettleton argues that the Supreme Court in Rasul v. Bush, 542 U.S. 466, 467 (2004) found that the "United States exercises exclusive jurisdiction and control, over" NSGB. Notice of Removal at 4 (citing Rasul, 542 U.S. at 476). Not so. The Court in Rasul said nothing about legislative jurisdiction. It considered only whether federal courts have jurisdiction to hear federal habeas corpus petitions brought by persons detained on NSGB. Rasul, 542 U.S. at 470. In holding that the federal habeas statute applies to NSGB detainees, the Court refused to apply the general principle that congressional legislation is presumed not to have extraterritorial application. Id. at 480. The Court reasoned that the NSGB detainees were within the "'territorial jurisdiction' of the United States" because, by the terms of the Lease Agreement, the United States "exercises complete jurisdiction and control over" NSGB. Rasul, 542 U.S. at 480. In short, Rasul established that NSGB is within the territorial jurisdiction of the United States for the purpose of habeas petitions because of the United States' "complete jurisdiction." The Court said nothing about "legislative jurisdiction," exclusive or otherwise, and it certainly did not consider whether civil actions that arise on the Base are governed by state or federal law. Nor did it suggest that the federal government's jurisdiction over NSGB pursuant to the Lease Agreement was co-extensive with the "exclusive legislative" jurisdiction exercised by Congress pursuant to the Enclave Clause.

Dist. LEXIS 88590, at *1 (D. Nev. Aug. 9, 2011) (holding that a preemption defense based on the Property Clause could not support federal question jurisdiction). Despite this authority, in his Response to Remand, Nettleton argues that "[F]ederal substantive law applies exclusively to the conduct that forms the basis for Plaintiffs' Complaint. That is to say that federal substantive law applies exclusively to all of Plaintiffs' claims." See Response to Remand at 6. He further suggests that Congress has completely preempted all state law causes of action on NSGB by making federal law exclusive and thereby creating federal question jurisdiction over this action. Id. at 8 (stating that Congress left Plaintiffs solely with federal substantive remedies). In making this argument, Nettleton appears to conflate ordinary preemption with complete preemption.

Complete preemption is distinct from ordinary preemption. While ordinary preemption occurs when federal law displaces state law pursuant to the Supremacy Clause, Geddes v. Am. Airlines, Inc., 321 F.3d 1349, 1352 n.3 (11th Cir. 2003), complete preemption occurs when Congress so completely preempts a particular area that the state law claims are necessarily federal in character and necessarily arise under federal law. Metropolitan Life, 481 U.S. at 63–64. For complete preemption, the preemptive force of the federal law must be so extraordinary that it entirely displaces the state cause of action, converting it into a federal one that gives the defendant a right to remove the

case to federal court. <u>Geddes</u>, 321 F.3d at 1353 (citations omitted). When state law is completely preempted, federal question jurisdiction exists. <u>Geddes</u>, 321 F.3d at 1352 (citing <u>Caterpillar v. Williams</u>, 482 U.S. 386, 393 (1987)).

Complete preemption, however, is a rare, extraordinary occurrence. So rare, in fact, that the Supreme Court has found the doctrine applicable to just three statutes.[14] <u>Dunlap</u>, 381 F.3d at 1291; <u>Turner v. Bristol at Tampa Rehab. & Nursing Ctr., LLC</u>, No. 8:21-cv-0719-KKM-CPT, 2021 WL 4261430, at *2 (M.D. Fla. Sept. 20, 2021).[15] Indeed, the Eleventh Circuit has noted that the Supreme Court recognizes complete preemption "hesitatingly, and it [has] display[ed] no enthusiasm to extend the doctrine to" new areas. <u>Blab T.V.</u>, 182 F.3d at 856. Therefore, complete preemption is strictly limited to those "statutes with 'extraordinary' preemptive force." <u>Geddes</u>, 321 F.3d at 1353 (quoting <u>Caterpillar</u>, 482 U.S. at 393; <u>Metropolitan Life</u>, 481 U.S. at 65).

The critical consideration of the complete preemption analysis is congressional intent. <u>Blab T.V.</u>, 182 F.3d at 857. The question is whether Congress not only intended to preempt the state claim by providing a federal

---

[14] The Court found complete preemption in the Labor Management Relations Act, ("LMRA"), 29 U.S.C. § 185, the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a), and the National Bank Act, 12 U.S.C. §§ 85, 86. <u>Dunlap</u>, 381 F.3d at 1291.

[15] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority.   See <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

defense, but also to make the action removable by converting the state claim into a federal cause of action.[16] Id. The inquiry into congressional intent begins with the text, and the court may also look to legislative history. Geddes, 321 F.3d at 1353. Based on the text and history, the court must determine whether complete preemption is manifest in the clearly expressed intent of Congress. Id. (citing Metropolitan Life, 481 U.S. at 66). Here, the Court finds that the Lease Agreement does not evince a Congressional intent to completely preempt Plaintiffs' state law claims.

As an initial matter, the Court observes that Congress's failure to create a federal cause of action that covers the preempted state claim is likely a dispositive indication that Congress did not intend to completely preempt the state law claims. See Franchise Tax Bd., 463 U.S. at 26; Metropolitan Life, 481 U.S. at 66. Indeed, in Franchise Tax Bd., the Supreme Court held that an ERISA provision did not completely preempt a state law claim because the provision contained no alternative cause of action in favor of the plaintiff taxing authority. 463 U.S. at 26. The Court explained that complete preemption cannot occur unless the state claim falls within the scope of the

---

[16] The Supreme Court has also found such intent when Congress expressly preempts state law and provides for removal. See El Paso Nat. Gas Co. v. Neztsosie, 526 U.S. 473, 484 (1999) (finding that, through the "unusual preemption provision" of the Price-Anderson Act, Congress "expressed unmistakable preference" to permit removal). Because the NSGB Lease Agreement lacks such an express provision, and because El Paso Nat. Gas Co. turned on the special historical relationship between Indian tribes and the Federal Government, the Court finds it unhelpful to the analysis at hand.

federal cause of action. Id. at 24. Thus, while the ERISA provision may have preempted state law, the state claim itself was not converted into a federal cause of action for purposes of removal. Id. at 26. Rather the ERISA provision raised a potential ordinary preemption defense which did not provide a basis for the federal court to exercise subject matter jurisdiction over the action. Id. at 26-28 (finding no federal question jurisdiction despite an ERISA defense, vacating the judgment, and remanding the case to the California court in which it was filed).

Five years after Franchise Tax Bd., in Metropolitan Life, the Supreme Court examined whether a different ERISA provision completely preempted a state law disability benefits claim. See Metropolitan Life, 481 U.S. at 60. The relevant question, according to the Court, was whether a state common law claim asserting the improper processing of a claim for benefits under an ERISA plan "are not only pre-empted by ERISA, but also displaced by ERISA's civil enforcement provision, § 502(a)(1)(B)." Id. The displacement finding was necessary because the Court in Franchise Tax Bd. instructed that preemption, without more, does not convert a state claim into an action arising under federal law. Id. at 63–66. Unlike the provision in Franchise Tax Bd., § 502's civil enforcement provision provided a federal cause of action. Id. As a result, the Court held that ERISA completely preempted the state law disability benefits claim presented in the complaint. Id. at 64-67. For that reason, the

state law claim was "necessarily federal in character" such that removal to federal court based on the presence of a federal question was proper. Id. at 67.

The main distinction between Franchise Tax Bd. and Metropolitan Life is that the plaintiff in Metropolitan Life alleged a state law claim that was both preempted by ERISA's preemption provision and replaced by ERISA's civil enforcement provision. As noted by the First Circuit Court of Appeals in Fayard v. Ne. Vehicle Servs., LLC, 533 F.3d 42 (1st Cir. 2008), these two elements—an exclusive federal regulation coupled with a federal cause of action—are common denominators of Supreme Court cases finding complete preemption by federal statute. Id. at 46 (citations omitted).[17] Indeed, a majority of circuit courts have concluded that complete preemption requires a replacement federal cause of action. Fayard, 533 F.3d at 46; Briarpatch Ltd., L.P v. Phoenix Pictures, Inc., 373 F.3d 296, 305 (2d Cir. 2004); Goepel v. Nat'l Postal Mail Handlers Union, 36 F.3d 306, 313 (3d Cir. 1994); Strong v. Telectronics Pacing Sys., Inc., 78 F.3d 256, 260–61 (6th Cir. 1996) (citing Warner v. Ford Motor Co., 46 F.3d 531, 534 (6th Cir.1995)); Utley v. Varian

---

[17] "For complete preemption to operate, the federal claim need not be co-extensive with the ousted state claim. On the contrary, the superseding federal scheme may be more limited or different in its scope and still completely preempt." Id. (citing Caterpillar, Inc. v. Williams, 482 U.S. 386, 391 n. 4, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). It may be that the remedy supplied by the state cause of action is not available under the federal law. That does not mean there is no preemption, it simply means the state law claim "disappears." Id. (citing Felix v. Lucent Techs., Inc., 387 F.3d 1146, 1162 (10th Cir. 2004).

Assocs., Inc., 811 F.2d 1279, 1284–85 (9th Cir. 1987); Schmeling v. NORDAM,

97 F.3d 1336, 1343 (10th Cir. 1996).[18]

Here, the Lease Agreement provides no federal cause of action of any

kind. And, Nettleton has not argued that any federal statute replaces or

otherwise covers the state law claims raised by Plaintiffs converting them into

federal claims.[19] Although Nettleton argues that the Lease Agreement renders

federal law exclusive on the Base, as noted previously, this argument is, at

best, one of ordinary preemption pursuant to the Supremacy Clause, not

complete preemption, and provides no basis for removal to federal court.

Geddes, 321 F.3d at 1352 (citing Caterpillar, 482 U.S. at 393); Donkor v. Brit.

Airways Corp., 62 F. Supp. 2d 963, 971 (E.D.N.Y. 1999) (stating that

preemption, by itself, cannot provide grounds for removal to federal court).

---

[18] A minority of circuit courts deem a replacement federal cause of action probative of Congress's intent, but not necessary. See, e.g., Rosciszewski v. Arete Assocs. Inc., 1 F.3d 225, 231–33 (4th Cir. 1993). The Eleventh Circuit has not addressed the issue directly. However, good reason exists to believe that the Eleventh Circuit would find a replacement federal cause of action necessary. The minority of circuit courts who do not require a replacement cause of action do so in reliance on broad language in Caterpillar—a case decided after Franchise Tax Bd. and Metropolitan Life. See Tristin K. Green, Complete Preemption—Removing the Mystery from Removal, 86 CALIF. L. REV. 363, 382–83 (1998). Those courts suggest that Caterpillar changed the scope of the complete preemption doctrine as announced in Franchise Tax Bd. and Metropolitan Life. Id. The Eleventh Circuit, however, has stated that Caterpillar "left undisturbed the scope of the complete preemption doctrine." Blab T.V., 182 F.3d at 856. Thus, the Eleventh Circuit has suggested that the scope of complete preemption is determined by Franchise Tax Bd. and Metropolitan Life, and those cases appear to require the existence of a federal cause of action. But, as in Blab T.V., the Court need not resolve that conflict to decide the jurisdictional question presented in this case.

[19] Indeed, quite to the contrary, Nettleton contends that under federal law Plaintiffs have no cause of action.

In addition to the absence of a federal cause of action, the Lease Agreement also lacks any other clear manifestation of Congressional intent to convert all state claims into federal causes of action. Nothing in the text of the Lease Agreement purports to deal with any specific area of federal law, nor does it contain any reference to state law. Instead, it deals solely with the shared powers of Cuba and the United States.[20] Notably, the Lease Agreement contains no language empowering the federal courts to hear disputes governed by or arising under the Lease Agreement or on NSGB. See Blab T.V., 182 F.3d at 855. The Metropolitan Life court relied heavily on the presence of such language in finding that Congress intended ERISA's § 502 civil enforcement provision to have the extraordinary preemptive power to convert a state law complaint to one raising a federal claim. Metropolitan Life, 481 U.S. at 65; see also Blab T.V., 182 F.3d at 855 (noting that in finding complete preemption by ERISA § 502, the Metropolitan Life court noted that the language in § 502 that grants jurisdiction to federal courts was virtually identical to the language in § 301 of the LMRA).

Looking to the Lease Agreement's legislative history, the Court has not uncovered—nor been presented with—a single reference to state law, state

---

[20] See Lease Agreement, Art. I (detailing the geographic limits of the leased territories); Art. II (allocating to the United States the right to use and occupy water adjacent to the territories); Art. III (allocating sovereign powers of the United States and Cuba over Guantanamo Bay).

causes of action, potential federal causes of action or the ability to bring suit in federal court. See Blab T.V., 182 F.3d at 857 (finding no intent for complete preemption—despite jurisdictional language suggesting complete preemption—because the legislative history lacked any statement that complete preemption was intended).

Because the Lease Agreement lacks an express cause of action, and because the text and history provide no other evidence of Congress's intent to completely preempt state law, the Court cannot find the doctrine of complete preemption to apply here. See Beneficial Nat'l. Bank v. Anderson, 539 U.S. 1, 7 (2003) (stating that the Supreme Court upheld complete preemption for two reasons—the express federal cause of action in the statute and the unambiguous indication of intent in the legislative history) (citing Metropolitan Life, 481 U.S. at 65). As such, the state law claims presented by Plaintiffs remain state law claims which provide no basis for an exercise of jurisdiction under 28 U.S.C. § 1331's grant of subject matter jurisdiction over claims arising under federal law.

The Court cautions that this Order does not pass on whether the Lease Agreement precludes the application of state tort law on NSGB. See Geddes, 321 F.3d at 1353 (explaining that a federal law may substantively displace state law under ordinary preemption but lack the extraordinary force to create federal removal jurisdiction under the doctrine of complete preemption). That

question goes to the merits of Nettleton's ordinary preemption defense, which the Court lacks power to consider. <u>See</u> <u>Caterpillar</u>, 482 U.S. at 398 n.13 (leaving the merits of ordinary preemption arguments to be addressed by the state court). The Court simply holds that Nettleton has failed to carry his burden of proving that by virtue of the NSGB Lease Agreement federal law completely preempts state law converting claims arising on NSGB into federal claims over which the Court would have federal question subject matter jurisdiction.

## B. Anticipated Immunity Defense

The Federal Torts Claims Act ("FTCA") confers absolute immunity to federal employees who commit a tort while acting within the scope of their employment.[21] <u>See</u> 28 U.S.C. § 2679(b)(1). In his Response to Remand, Nettleton states that much of his conduct "appears to have been committed within the course and scope of [his] employment." <u>See</u> Response to Remand at 8. Nettleton contends that this anticipated immunity defense is a substantial,

---

[21] The scope determination phase proceeds along one of two paths: government certification or court petition. First, the Attorney General may certify that the employee was acting within the scope of his office. <u>See</u> 28 U.S.C. § 2679(d); <u>see also</u> 28 C.F.R. § 15.4. Absent certification, the defendant may petition the court anytime before trial to certify that he was acting within the scope of employment. 28 U.S.C. § 2679(d)(3). Once the petition is made, the United States may remove the case to federal court, and once certification is filed, the federal court has exclusive jurisdiction, § 2679(d)(2). Here, the Attorney General has not certified that Nettleton was acting within the scope of his employment, and Nettleton has not petitioned the Court for certification. Therefore, the exclusive jurisdiction conferred by the FTCA is not relevant at this juncture. <u>See</u> <u>Sanchez v. Beacon Info. Tech. & Staffing & Serv., LLC</u>, No. EP-08-CV-332-KC, 2009 WL 4877705, at *3 (W.D. Tex. Dec. 10, 2009).

disputed federal issue that is a necessary element of Plaintiffs' state law claim. Id. at 8–9; Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005). The Court disagrees.

As previously discussed, an anticipated federal defense does not create a federal question. Kemp v. Int'l Bus. Mach. Corp., 109 F.3d 708, 712 (11th Cir. 1997) (stating that federal defenses do not fall within the well-pleaded complaint). Therefore, similar to Nettleton's ordinary preemption defense, it is well-settled that a federal immunity defense does not raise a federal question or support an exercise of federal question jurisdiction by this Court. Okla. Tax Comm'n v. Graham, 489 U.S. 838, 841–42 (1989). Here, Nettleton's claim of immunity under the FTCA is an affirmative defense; it is not a necessary element of Plaintiffs' claims, nor does it appear on the face of the well-pleaded Complaint. As a result, it does not create a federal question. Mitchell v. Bailey, 982 F.3d 937, 940-41 (11th Cir. 2020) (noting that the prospect of certification that an employee was acting within the scope of his employment does not supply federal subject matter jurisdiction); Sanchez v. Beacon Info. Tech. & Staffing & Serv., LLC, No. EP-08-CV-332-KC, 2009 WL 4877705, at *3 (W.D. Tex. Dec. 10, 2009) (holding that the anticipated defense of federal immunity under the FTCA does not create federal question jurisdiction).[22]

---

[22] In his Motion to Dismiss, Nettleton attempts to invoke field preemption based upon the FTCA and the Defense Base Act, 42 U.S.C. §§ 1651 et seq., as well as conflict preemption.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court concludes that Plaintiffs have alleged only state law claims that present no basis for the exercise of subject matter jurisdiction over this action. As such, the Motion for Remand is due to be granted, and this case will be remanded to the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida.

Accordingly, it is

**ORDERED:**

1.   Plaintiffs' Motion for Remand to State Court (Doc. 23) is **GRANTED**.

2.   The case is hereby **REMANDED** to the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida.

---

<u>See</u> Captain Nettleton's Motion to Dismiss and Incorporated Memorandum of Law (Doc. 21). His attempt to rely on any regulation arising from the FTCA and the Defense Base Act is unavailing as neither applies here based on the pleading. Plaintiffs have sued Nettleton, not the United States, and the requisite certification of Nettleton acting within the scope of his employment is lacking. His invocation of conflict preemption also fails. Like his assertions of ordinary preemption and immunity, conflict preemption raises a potential defense but does not create a federal question supporting removal. <u>See</u> <u>Conn. State Dental Association v. Anthem Health Plans, Inc.</u>, 591 F.3d 1337, 1344 (11th Cir. 2009) (noting that conflict preemption is only a defense not a basis for removal).

3.      The Clerk is **DIRECTED** to mail a certified copy of this Order to the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida, terminate any pending motions, and **CLOSE** the case.

   **DONE** and **ORDERED** in Jacksonville, Florida this 26th day of April, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

Copies to:
Counsel of Record
Clerk, Fourth Judicial Circuit